1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   COUNCIL ON AMERICAN-ISLAMIC              No. 2:22-cv-01500-TLN-KJN
     RELATIONS, CALIFORNIA, et al.,
12
                  Plaintiffs,
13                                            **ORDER**
             v.
14
     ANTONY BLINKEN, in his official
15   capacity as U.S. Secretary of State, et al.,

16                Defendants.

17

18          This matter is before the Court on Plaintiffs Council on American-Islamic Relations,

19   California, Council on American-Islamic Relations, Sacramento Valley/Central California, and

20   approximately 159 Iranian FY-2022 diversity visa selectees and their derivatives (collectively,

21   "Plaintiffs") Motion for a Temporary Restraining Order ("TRO").  (ECF No. 12.)  Defendants

22   Antony Blinken, sued in his capacity as the United States Secretary of State, and Morgan D.

23   Miles, sued in his capacity as the Director of the Kentucky Consular Center ("KCC"),

24   (collectively, "Defendants") filed an opposition.[1]  (ECF No. 14.)  Plaintiffs filed a reply.  (ECF

25   No. 18.)  For the reasons set forth below, the Court DENIES Plaintiff's motion.

26

27   _____
     [1]      Defendants request to file an oversized brief and request the Court accept their late filing.
28   (ECF Nos. 15, 16.)  Based on the shortened briefing schedule and complex subject matter at issue
     in this case, the Court GRANTS Defendants' requests.

1

## I.       FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs consist of Iranian national selectees for the Fiscal Year 2022 ("FY 2022")
diversity visa program, plus their spouses and children, as well as two non-profit civil rights and
advocacy organizations.  (ECF No. 6.)  The "diversity visa program makes as many as 55,000
visas available annually to citizens of countries with low rates of immigration to the United
States."  *Shahi v. U.S. Dep't of State*, 33 F.4th 927, 928 (7th Cir. 2022) (citing 8 U.S.C. §§
1151(e), 1153(c)).  Congress created rules governing the diversity visa application and
adjudication process to be implemented by the Secretary of State.  *See* 8 U.S.C. §§ 1153(c),
1154(a)(1)(I), 1202.  Because the number of diversity visa selectees typically exceeds the number
of available visas, the Department of State (the "Department") holds a lottery to determine
priority.  *Shahi*, 33 F.4th at 928.  Lottery winners are eligible to receive a visa only during the
fiscal year in which they are selected to apply.  8 U.S.C. § 1153(e)(2); 22 C.F.R. § 42.33(f).
Selectees can then submit a visa application and receive a "rank order" that determines the order
in which they may be scheduled for an interview to have their application adjudicated.  *See* 22
C.F.R. §§ 42.33(b)–(d).  Because the diversity visa program restarts each fiscal year, consular
officers may not issue diversity visas after midnight on the last day of the fiscal year —
September 30th.  22 C.F.R. §§ 42.33(a)(1), (d), (f); *see* 31 U.S.C. § 1102.

Plaintiffs filed the instant action on August 25, 2022 (ECF No. 1), and the operative First
Amended Complaint ("FAC") on September 6, 2022 (ECF No. 6).  Plaintiffs seek to avoid losing
eligibility for diversity visas before the deadline by challenging the Department's alleged failure
to abide by the statutes and regulations governing the diversity visa program.  (*Id.* at 2.)  Plaintiffs
assert the following claims against Defendants: (1) violation of the Administrative Procedure Act
("APA"), 5 U.S.C. § 706(1), based on the withholding of Plaintiffs' diversity visa applications;
(2) violation of the APA, 5 U.S.C. § 555(b), based on unreasonable delay in the adjudication of
Plaintiffs' diversity visa applications; (3) violation of the Immigration and Nationality Act
("INA"), 8 U.S.C. § 1152(a)(1)(A), based on discrimination against Iranian national diversity visa
selectees; and (4) violation of the *Accardi* doctrine based on the failure to schedule Plaintiffs for
visa interviews according to the Department's own policies.  (*Id.* at 18–23.)

1    Plaintiffs filed the instant motion for a TRO on September 12, 2022.  (ECF No. 12.)

2    Plaintiffs request, among other things, that the Court "[m]andate Defendants fulfill their

3    mandatory, nondiscretionary duty to process Plaintiffs' immigrant visa applications, schedule

4    Plaintiffs for immigrant visa interviews, and issue visas to eligible Applicant Plaintiffs and DV-

5    22 applicants" and "[e]nter a decision under the All-Writs Act or any other legal or equitable

6    authority to reserve visas numbers for Applicant Plaintiffs beyond September 30, 2022 in the

7    event that Defendants fail to fully adjudicate and issue Plaintiffs' visas before that deadline."

8    (ECF No. 12-9.)  Defendants opposed (ECF No. 14), and Plaintiffs replied (ECF No. 18).

9        **II.    STANDARD OF LAW**

10    A temporary restraining order is an extraordinary and temporary "fix" that the court may

11    issue without notice to the adverse party if, in an affidavit or verified complaint, the movant

12    "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant

13    before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  The purpose

14    of a temporary restraining order is to preserve the status quo pending a fuller hearing.  *See* Fed. R.

15    Civ. P. 65.  It is the practice of this district to construe a motion for temporary restraining order as

16    a motion for preliminary injunction.  E.D. Cal. L.R.  231(a); *see also Aiello v. One West Bank*,

17    No. 2:10-cv-00227-GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) ("Temporary

18    restraining orders are governed by the same standard applicable to preliminary injunctions.")

19    (internal quotation and citations omitted).

20    Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear

21    showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555

22    U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  "The

23    purpose of a preliminary injunction is merely to preserve the relative positions of the parties until

24    a trial on the merits can be held."  *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981);

25    *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305

26    (2012) ("The purpose of such an order is to preserve the status quo until a final determination

27    following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt Disney, Co.*, 202

28    F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation

before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (internal quotation marks omitted).  In cases where the movant seeks to alter the status quo, preliminary injunction is disfavored and a higher level of scrutiny must apply. *Schrier v. University of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005).  A preliminary injunction is not automatically denied simply because the movant seeks to alter the status quo, but instead the movant must meet heightened scrutiny.  *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, the plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction.  *Id.* at 1134–35.

### III.   ANALYSIS

As a preliminary matter, Plaintiffs' delay arguably warrants outright denial of this motion.  Under the Court's Local Rules, a court faced with a TRO "will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief."  E.D. Cal. L.R. 231(b).  If the court finds such a delay, it may deny the TRO on those grounds alone.  *Id.*

In the instant case, Plaintiffs fail to explain why they waited until less than three weeks before the "looming" September 30 deadline to file a TRO.  *See Gorgadze v. Blinken*, No. CV 21-

4

1    2421 (JDB), 2021 WL 4462659, at *10 (D.D.C. Sept. 29, 2021) ("The strictures of the September

2    statutory deadline looming over this case are unforgiving, and plaintiffs knew as much, yet

3    they . . . waited until less than two weeks before that deadline to file suit.").  It also bears

4    mentioning that Plaintiffs waited over two weeks after filing the original Complaint to file a TRO.

5    Absent any explanation, the Court concludes Plaintiffs could have filed a motion for preliminary

6    injunction much earlier in the year, as other plaintiffs have done in a similar case.  *See United Afr.*

7    *Org. v. Biden*, No. 1:22-CV-02599, 2022 WL 3212370, at *1, 4 (N.D. Ill. Aug. 9, 2022) (denying

8    a motion for preliminary injunction filed by diversity visa selectees in June 2022 seeking to

9    compel the government to adjudicate their applications by September 30, 2022).  By waiting to

10   seek last-minute relief from this Court, Plaintiffs created needless urgency that has handicapped

11   Defendants' ability to respond and the Court's ability to address the parties' arguments as

12   thoroughly as it otherwise would have.

13           With that caveat, the Court ultimately denies the TRO based on Plaintiffs' failure to

14   establish likelihood of success on the merits.[2]  The Court will discuss each claim in turn.

15                       A.    Withholding

16           Plaintiffs argue the Department has a nondiscretionary duty to review and adjudicate their

17   visa applications pursuant to 8 U.S.C. § 1202(b) ("§ 1202(b)").  (ECF No. 12-1 at 23.)  Plaintiffs

18   allege the Department has withheld the adjudication of their visa applications "by failing to

19   consider diversity applicants in the rank order of their selection."  (ECF No. 6 at 2.)  In

20   opposition, Defendants argue Congress has not mandated that the Department must adjudicate all

21   diversity visa cases.  (ECF No. 14 at 28.)

22           Under the APA, a court "shall compel agency action unlawfully withheld or unreasonably

23   delayed" where an agency fails to take a discrete action it is required to take.  5 U.S.C. § 706(1);

24   *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  In the instant case, Plaintiffs have not

25   persuaded the Court that § 1202(b) imparts a non-discretionary, mandatory duty to schedule

26

27   [2]    Although Defendants make various arguments challenging standing on the part of the
     organizational Plaintiffs, the Court decides the TRO on the most expeditious ground, which here
28   is likelihood of success on the merits.

interviews or adjudicate diversity visa applications before September 30th.  Section 1202(b) is labeled "Other Documentary Evidence for Immigration Visa."  After describing the types of documents noncitizens must present as part of their applications, § 1202(b) states, "All immigrant visa applications shall be reviewed and adjudicated by a consular officer."  Importantly, "§ 1202(b) is completely silent as to the form, manner, and timeframe in which Defendants' must process diversity visa applications" and "offers no timeframe for the scheduling of interviews or when applications must be reviewed."  *Preston v. Kentucky Consular Ctr.*, No. 6:22-CV-015-CHB, 2022 WL 3593052, at *14 (E.D. Ky. Aug. 22, 2022); *see also Zarei v. Blinken*, No. 1:21-CV-02102 (CJN), 2021 WL 9146060, at *1 (D.D.C. Sept. 30, 2021) ("[I]f this sentence did create the type of duty suggested by [p]laintiff, one would expect it to be in a statutory section addressing the Diversity Visa program rather than buried in a provision discussing the necessary documents needed for a visa application generally.")  Indeed, the Government persuasively argues that "nothing in the INA mandates the Department process a minimum number of diversity visas, much less that the Department process the visa cases of all selectees who submit a DS-260," and "the Department routinely selects far more diversity visa entrants than there are available visas."  (ECF No. 14 at 29 (citing 8 U.S.C. §§1151(a)(3), (e) (setting the cap of 55,000 diversity immigrants per fiscal year)).)  For example, the Government indicates there have been over 100,000 diversity visa selectees and derivatives for FY 2022.  (*Id.* at 31.)

Plaintiffs cite an Eastern District of California case stating § 1202(b) "imposes a mandatory duty on consular officers to review and adjudicate immigrant visa applications."  *Kassem v. Blinken*, No. 1:21-CV-01400-DAD-HBK, 2021 WL 4356052, at *5 (E.D. Cal. Sept. 24, 2021) (citing (*Filazapovich v. Dep't of State*, No. 21-cv-00943-APM, 2021 WL 4127726, at *17 (D.D.C. Sept. 9, 2021)).  However, the judge who decided *Filazapovich* (the case upon which *Kassem* relied) recently denied a TRO like the one at issue in the instant case.  (ECF No. 26-1, Transcript of Hearing in *Obiedat v. Blinken*, Case No. 22-cv-2326 (D.D.C. Sept. 21, 2022).).  The judge clarified that *Filazapovich* did *not* hold that the Department has a mandatory duty to adjudicate or grant every single diversity visa applicant an interview.  (*Id.* at 4.)  The judge explained that *Filazapovich* arose in the "very unique context of which the Department, by

1  policy, had simply stopped adjudicating visa applications altogether." (*Id.*)  As in *Obiedat*,

2  Plaintiffs in the instant case "have not pointed to any rule or regulation or statute that requires the

3  State Department to adjudicate any individual visa" or schedule interviews.[3]  (*Id.* at 19.)

4          Thus, Plaintiffs have not shown they are likely to succeed on their withholding claims.

5                  B.      Discrimination

6          Plaintiffs next argue the Department has withheld adjudication of visa applications based

7  on their nationality and place of residence in violation of 8 U.S.C. § 1152(a)(1)(A) ("§

8  1152(a)(1)(A)").  (ECF No. 12-1 at 24.)  In opposition, Defendants argue the Department has not

9  treated Iranians differently than other diversity visa selectees.  (ECF No. 14 at 40.)

10         Section 1152(a)(1)(A) states in relevant part, "no person shall receive any preference or

11  priority or be discriminated against in the issuance of an immigrant visa because of the person's

12  race, sex, nationality, place of birth, or place of residence."  8 U.S.C. § 1152(a)(1)(A).

13         The Court agrees with Defendants that Plaintiffs fail to present evidence that the

14  Department's alleged withholding has anything to do with Plaintiffs' nationality or place of

15  residence.  Plaintiffs vaguely argue the Department's "access control policies" discriminate

16  against an applicant's nationality.  (ECF No. 12-1 at 14.)  Plaintiffs' only evidence to support this

17  proposition is Exhibit A, which consists of Department emails related to scheduling FY 2021

18  diversity visa selectees.  (ECF No. 12-2.)  Plaintiffs do not cite — nor can the Court locate —

19  specific portions of those emails that indicate Iranian selectees have been treated differently than

20  any other selectees in FY 2022.  Plaintiffs also fail to respond to Defendants' argument and

21  evidence that the Department has in fact scheduled 168 diversity visa selectees whose foreign

22  state of chargeability is Iran at the U.S. Embassy in Iran, and the Department has scheduled four

23  diversity selectees at the U.S. Embassy in Mumbai because the U.S. Embassy in Mumbai offered

24  its capacity to selectees whose designated post lacks any more capacity for the fiscal year.  (ECF

25  No. 14 at 44.)

---

26  [3]      Although Plaintiffs argue in reply that other statutes implementing the diversity visa
27  program impose a mandatory duty to adjudicate diversity visas, the Court need not and does not
    consider arguments raised for the first time in reply.  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th
28  Cir. 2007).

1    Absent evidence Defendants have discriminated against Plaintiffs because of their

2    nationality or place of residence, Plaintiffs have not shown they are likely to succeed on their

3    discrimination claims.

4              C.    Unreasonable Delay

5    Plaintiffs argue they are likely to succeed on their unreasonable delay claims based on the

6    factors set forth in *TRAC*.  (ECF No. 12-1 at 25.)  In opposition, Defendants argue the *TRAC*

7    factors favor Defendants.  (ECF No. 14 at 31.)

8    In evaluating the reasonableness of an agency delay, a court considers what are known as

9    the six *TRAC* factors:

10             (1) the time agencies take to make decisions must be governed by a
       rule of reason; (2) where Congress has provided a timetable or other
11             indication of the speed with which it expects the agency to proceed
       in the enabling statute, that statutory scheme may supply content for
12             this rule of reason; (3) delays that might be reasonable in the sphere
       of economic regulation are less tolerable when human health and
13             welfare are at stake; (4) the court should consider the effect of
       expediting delayed action on agency activities of a higher or
14             competing priority; (5) the court should also take into account the
       nature and extent of the interests prejudiced by delay; and (6) the
15             court need not find any impropriety lurking behind agency lassitude
       in order to hold that agency action is unreasonably delayed.
16
*In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 836–37 (D.C. Cir. 2012) (quoting
17
*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*")).
18
     Plaintiffs' unreasonable delay claims fail because they have not shown as a threshold
19
matter that Defendants have a mandatory duty to adjudicate their visas.  *See Norton*, 542 U.S. at
20
63 & n.1 (stating "the only agency action that can be compelled under the APA is action legally
21
required" and "a delay cannot be unreasonable with respect to an action that is not required").
22
Even if Plaintiffs had shown Defendants had such a duty, Plaintiffs fail to establish unreasonable
23
delay under the *TRAC* factors.  The Court has considered all the *TRAC* factors but will only
24
address the fourth factor herein based on the expedited nature of this motion.  Indeed, the *Obiedat*
25
court found a similar claim was unlikely to succeed on the merits based on the fourth *TRAC* factor
26
alone.  (ECF No. 26-1 at 20–21); *see also Gorgadze v. Blinken*, No. CV 21-2421 (JDB), 2021 WL
27
4462659, at *10 (D.D.C. Sept. 29, 2021) ("Even assuming the remaining TRAC factors weigh in
28

1    plaintiffs' favor, factor four's heavy weight against them all but precludes their unreasonable

2    delay claims from succeeding on the merits.").

3           "The fourth factor requires the Court to consider the effect of expediting adjudication of

4    [plaintiff's] application 'on agency action of a higher or competing priority.'"  *Poursohi v.*

5    *Blinken*, No. 21-CV-01960-TSH, 2021 WL 5331446, at *10 (N.D. Cal. Nov. 16, 2021) (citation

6    omitted).  "Even in situations where all of the other *TRAC* factors favor granting relief, relief may

7    be denied where a judicial order putting an applicant 'at the head of the queue would simply

8    move all others back one space and produce no net gain.'"  *Id.* (quoting *Liuqing Zhu v. Cissna*,

9    No. CV 18-9698 PA (JPRX), 2019 WL 3064458, at *5 (C.D. Cal. Apr. 22, 2019)); *see Jain v.*

10   *Renaud*, No. 21-cv-03115-VKD, 2021 WL 2458356, at *6 (N.D. Cal. June 16, 2021) (collecting

11   cases).  "Relief that would simply 'reorder' a queue of applicants seeking adjudication is

12   generally viewed as inappropriate when 'no net gain' in such adjudications is achieved."  *Tate v.*

13   *Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021).

14          The Court agrees with Defendants that Plaintiffs essentially seek to be placed ahead of

15   other diversity visa selectees.  *See Murway v. Blinken*, No. CV 21-1618 (RJL), 2022 WL 493082,

16   at *4 (D.D.C. Feb. 16, 2022) ("Because processing capacity is presently a zero-sum game,

17   granting plaintiffs' request to expedite would necessarily mean additional delays for other

18   applicants — many of whom undoubtedly face hardships of their own.") (alterations and internal

19   quotation marks omitted); *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021)

20   ("Ordering Defendants to immediately schedule visa interviews for Plaintiffs and adjudicate their

21   visas is 'the very type of agency action . . . that if compelled would presumably delay other

22   adjudications.'").  As such, the fourth *TRAC* factor weighs heavily against Plaintiffs and likely

23   precludes them from succeeding on the merits of their unreasonable delay claim.

24                    D.    *Accardi* Doctrine

25          Under the *Accardi* doctrine, an individual can sue an agency for failure to follow the

26   agency's own rules and procedures.  *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 262,

27   268 (1954); *see also Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1487 (9th

28   Cir. 1990) ("Pursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its

1  own internal operating procedures."); *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004)

2  ("[C]ourts have recognized that the so-called *Accardi* doctrine extends beyond formal

3  regulations.").

4      Plaintiffs argue they have sufficiently shown that Defendants have acted in a manner that

5  conflicts with their own stated binding policy, 22 C.F.R. § 42.33(e), which states:

6          **Order of consideration.** Consideration for visa issuance to aliens
           whose petitions have been approved pursuant to paragraph (c) of this
7          section will be in the regional rank orders established pursuant that
           paragraph.
8
   22 C.F.R. § 42.33(c) states:
9
10         **Processing of petitions.** Entries received during the petition
           submission period established for the fiscal year in question and
11         meeting all of the requirements of paragraph (b) of this section will
           be assigned a number in a separate numerical sequence established
12         for each regional area specified in INA 203(c)(1)(F). Upon
           completion of the numbering of all petitions, all numbers assigned
13         for each region will be separately rank-ordered at random by a
           computer using standard computer software for that purpose. The
14         Department will then select in the rank orders determined by the
           computer program a quantity of petitions for each region estimated
15         to be sufficient to ensure, to the extent possible, usage of all
           immigrant visas authorized under INA 203(c) for the fiscal year in
16         question. The Department will consider petitions selected in this
           manner to have been approved for the purposes of this section.

17     Plaintiffs argue the Department has not followed 22 C.F.R. § 42.33(e) because it has

18 scheduled cases with higher rank numbers than Plaintiffs.  (ECF No. 12-1 at 23.)  Plaintiffs also

19 state that Defendants intentionally deviated from processing FY 2022 diversity visa applications

20 by case number rank in early December 2021, as evidenced by an internal memorandum.  (*Id.*)

21     In opposition, Defendants argue the Department has complied with its scheduling process

22 that has been in place since the fiscal year 2017 diversity program whereby the Department

23 schedules appointments based on the date of the visa number allocation *and* regional rank order.

24 (ECF No. 14 at 42.)  Defendants further argue while the order of consideration will be in regional

25 rank order, the Department may consider other factors.  (*Id.*)

26     Even assuming the Department has scheduled higher rank numbers before Plaintiffs,

27 Plaintiffs have not convinced that Court that doing so necessarily violates 22 C.F.R. § 42.33(e).

28 Defendants have shown that the Department considers various factors such as completion of a

1    DS-260 and interviewing post capacities in conjunction with rank order when scheduling

2    interviews.  (*See* ECF No. 14-4 at 2–4 (declaration of Morgan Miles explaining how regional rank

3    order, in conjunction with the timing of applicants' submissions and availability at relevant

4    consular posts, determines interview scheduling).)  Based on a sworn declaration from an agency

5    official, KCC schedules a selectee for an interview appointment to make a visa application if: (1)

6    the selectee has submitted a complete DS-260 or prior to December 9, 2021, a complete DS260

7    and required supporting documents;[4] (2) the designated post has made an appointment available;

8    (3) KCC has completed its processing of the selectee's case; and (4) the Visa Office has allocated

9    a visa number to the selectee and, if any, the selectee's derivatives, and the selectee's case is the

10   next case in the selection order.  (*Id.* at 3.)  Each post has a separate processing queue.  (*Id.*)

11   Thus, each post provides its capacity and schedule for diversity visa interviews to KCC.  (*Id.*)  To

12   schedule cases, KCC creates a calendar for each post, which is filled by ordering and selecting

13   cases from the queue for that post based on the date that cases transition to AV status and the

14   regional rank order of each case.  (*Id.*)  Put simply, the evidence shows the Department considers

15   rank order in scheduling interviews.  Plaintiffs have not persuaded the Court that 22 C.F.R. §

16   42.33(e) requires the Department to *only* consider rank order and to ignore other factors such as

17   date of visa number allocation and interview post capacities.  Accordingly, Plaintiffs are unlikely

18   to succeed on the merits of their *Accardi* doctrine claims.

19          In sum, Plaintiffs have not shown they are likely to succeed on the merits or that there are

20   serious questions going to the merits of their claims.  As such, the Court need not and does not

21   address the remaining *Winter* factors.  *See All. for Wild Rockies*, 632 F.3d at 1135 (A plaintiff

22   must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction).

23

---

24   [4]      Defendants' evidence shows that prior to December 2021, KCC would schedule interview
     appointments to make a visa application if a selectee had submitted a complete DS-260 and
25   supporting documents.  (*Id.*)  In December 2021, the Department initiated a pilot program for FY
     2022 selectees that allowed KCC to process a case when selectees submit a complete DS-260
26   without supporting documents.  (*Id.* at 2–3.)  Selectees then submit required supporting
     documents to the designated interviewing post for evaluation.  (*Id.* at 3.)  Based on the existing
27   evidence and arguments before the Court, Plaintiffs fail to persuade the Court that this change
     runs afoul of 22 C.F.R. § 42.33(e).
28

1    **IV.    CONCLUSION**

2           For the foregoing reasons, the Court hereby DENIES Plaintiffs' Motion for a TRO.  (ECF

3    No. 12.)

4           IT IS SO ORDERED.

5    **DATED:  September 26, 2022**

6                                                                    _____
                                                                     Troy L. Nunley
7                                                                    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28